Cite as 2021 Ark. App. 319

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV–21–48

|  |  |
|---|---|
| ASHLEY JACKSON<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered** September 8, 2021<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, ELEVENTH DIVISION<br>[NO. 60JV-19-949]<br><br>HONORABLE PATRICIA JAMES, JUDGE<br><br>AFFIRMED |

### RAYMOND R. ABRAMSON, Judge

Ashley Jackson appeals the Pulaski County Circuit Court order terminating her parental rights to her three children, A.H., D.M., and K.M.[1] On appeal, she argues that the circuit court erred by finding that it was in the children's best interest to terminate her parental rights. We affirm.

On August 27, 2019, the Arkansas Department of Human Services (DHS) filed a petition for ex parte emergency custody and dependency-neglect concerning A.H., D.M.,

---

[1]The court also terminated the parental rights of D.M. and K.M.'s father, Alexander McCravey; and A.H.'s father, Ryan Fraser. Alexander and Ryan did not appeal the termination order.

and K.M. The petition listed Ryan Fraser as A.H.'s legal father and Alexander McCravey as D.M. and K.M.'s putative father.

In the affidavit attached to the petition, DHS stated that a caseworker had visited Ashley's home in response to a call to the Jacksonville Police Department that the children had been left unsupervised, which led to Ashley's arrest for endangering the welfare of a minor. The affidavit noted that Ashley had requested that the children be placed with Alexander's father and stepmother, Michael and Kristen McCravey, and that the McCraveys had submitted an application for placement.

On the same day the petition was filed, the circuit court entered an ex parte order placing the children in DHS's custody. On August 28, the court entered a probable-cause order.

On October 16, the court adjudicated the children dependent-neglected based on inadequate supervision, environmental neglect, and parental unfitness. The McCraveys attended the adjudication hearing. At the hearing, the DHS caseworker testified that Kristen McCravey had a history with DHS involving alcohol and inadequate supervision. The caseworker also testified that A.H. had been placed in a different foster home from D.M. and K.M. and that A.H. is being considered for a therapeutic foster home.

On October 24, DHS moved to place the children with the McCraveys. DHS stated that the McCraveys had met all protective standards for fictive kin provisional placement and that they would begin licensed foster-home classes and complete a home study.

On February 12, 2020, the court held a review hearing.[2] Kristen McCravey attended the hearing, and DHS introduced her psychological evaluation. The DHS caseworker recommended that all three children be placed with the McCraveys. The caseworker noted that Kristen's psychological evaluation indicated alcoholism and dependent disorders but that the evaluation included Kristen's history from ten years ago. The caseworker stated that DHS would provide her services. Kristen explained that about seven years ago, DHS had opened a protective-services case concerning her daughter but that her daughter was never removed from her custody. She testified that she had been sober for seven years and that she would comply with DHS's orders.

In the review order, the court authorized visitation with the McCraveys, but it denied DHS's motion for placement. The court noted that Kristen's psychological evaluation "raises red flags" and that it was not in the best interest of the children to be placed with the McCraveys.

On March 3, DHS moved to place A.H. with the McCraveys. DHS stated that A.H.'s foster parents had asked that he be removed from their home. The ad litem opposed the motion and alleged that the McCraveys did not have the training and expertise to care for A.H.[3]

On August 17, the court held a permanency-planning hearing. The McCraveys did not attend the hearing. A.H.'s foster parent testified that she is qualified as a therapeutic

---

[2]At the hearing, the court made a finding that DNA showed Ryan to be A.H.'s father and Alexander to be D.M. and K.M.'s father.

[3]The circuit court did not enter an order specifically ruling on this motion.

3

foster parent and that A.H. had been diagnosed with ADHD. D.M. and K.M.'s foster parents testified that D.M. has cognitive delays and behavioral issues and that both D.M. and K.M. had been diagnosed with failure to thrive. They further discussed the demands of K.M.'s feeding tube. At the conclusion of the hearing, the court changed the goal of the case to adoption.

On August 25, DHS filed a petition for termination of Ashley's parental rights alleging three grounds for termination. On October 14, the court held a termination hearing. The McCraveys did not attend the hearing. Thereafter, on November 4, the court entered an order terminating Ashley's parental rights. This appeal followed.

We review termination–of–parental–rights cases de novo. *Hune v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 543. At least one statutory ground must exist in addition to a finding that it is in the children's best interest to terminate parental rights. Ark. Code Ann. § 9–27–341 (Repl. 2020); *Kohlman v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 164, 544 S.W.3d 595. A best-interest finding under the Arkansas Juvenile Code must include consideration of two factors: the likelihood of adoption and potential harm. Ark. Code Ann. § 9–27–341(b)(3)(A)(i) & (ii). Potential harm must be viewed in a forward–looking manner and in broad terms, including the harm the child suffers from the lack of stability of a permanent home. *Wallace v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 481, 470 S.W.3d 286.

On appeal, Ashley does not challenge the statutory grounds the circuit court relied on to terminate her parental rights. Instead, she argues that the circuit court erred by finding that it was in the children's best interest to terminate her parental rights because permanent custody with the McCraveys was a less restrictive alternative to termination. She asserts that

4

placement with the McCraveys would have strengthened the children's family ties and permitted them to live with their siblings.

We cannot address Ashley's family-relationship argument on appeal because she did not raise it to the circuit court. *See Scott v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 200, 624 S.W.3d 697; *Cole v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 481, 611 S.W.3d 218. Even in a case involving termination of parental rights where constitutional issues are argued, we will not consider arguments made for the first time on appeal. *Myers v. Ark. Dep't of Hum. Servs.*, 91 Ark. App. 53, 208 S.W.3d 241 (2005).

In her brief, Ashley discusses our decision in *Cole* and claims that we erroneously required the appellant in that case to appeal a review order to preserve a less restrictive relative-placement argument concerning the court's best-interest finding. Ashley misinterprets *Cole*. In *Cole*, this court held that appellant's argument was not preserved because she failed to raise the argument to the circuit court, not because she failed to appeal a review order. *See Cole*, 2020 Ark. App. 481, 611 S.W.3d 218. Similarly, in this case, we are precluded from considering Ashley's argument on appeal because she failed to raise it to the circuit court.

Affirmed.

GLADWIN and WHITEAKER, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Casey D. Copeland*, attorney ad litem for minor children.