Cite as 2021 Ark. App. 460

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV–21–206

| | |
|---|---|
| STACI AND TIMOTHY ASLAKSON | **Opinion Delivered** November 17, 2021 |
| APPELLANTS | APPEAL FROM THE CONWAY COUNTY CIRCUIT COURT [NO. 15JV-19-51] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE TERRY SULLIVAN, JUDGE |
| APPELLEES | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Staci and Timothy Aslakson appeal a Conway County Circuit Court order terminating their parental rights to their three children, KA, BA, and AA, raising a challenge to the trial court's best-interest finding. Finding no error, we affirm.

I. *Factual Background and Procedural History*

Staci and Timothy Aslakson are the biological parents of KA, BA, and AA. In July 2019, the Conway County Probation and Parole Office conducted a home visit at Staci's residence. They found drugs and drug paraphernalia within the home and within the reach of the children.[1] Staci was arrested. BA and AA were present at the time of the search and arrest. The Arkansas Department of Human Services (Department) was contacted and conducted a drug screen on Staci. She tested positive for methamphetamine, amphetamine,

---

[1]Some drugs were found inside a child's toy box.

benzodiazepine, oxycodone, and opiates. As a result of Staci's arrest and drug screen, the Department exercised a seventy-two-hour hold on the children and initiated a dependency-neglect proceeding.[2]

The court adjudicated the children dependent-neglected due to Staci's failure to provide a safe and appropriate home for the children.[3] The court found both Staci and Timothy unfit as a result of their use of controlled substances, which the court found seriously affected their ability to supervise, protect, or care for the children. The court set the goal of the case as reunification and established supervised visitation for both parents.

In a subsequent review hearing, the court continued custody with the Department, finding the Department had complied with the case plan and the orders of the court. Concerning Staci, the court noted that she had not been compliant with the case plan. She had not visited with the children and had failed to comply with her psychological evaluation and her drug-and-alcohol assessment. Concerning Timothy, the court noted that he had canceled several visitations, did not have reliable transportation, and had not provided any proof of income. Moreover, Timothy admitted that he was living with a significant other who had a history with the Department and that his current home was not appropriate. Concerning the children, the court determined that the Indian Child Welfare Act (ICWA)

---

[2]BA, AA, and another child were present when the search was conducted. BA and AA were taken into custody at the scene; KA was not taken into Departmental custody until the next day. The caption of the initial pleadings filed by the Department and the orders of the court, including the adjudication order and the January 9 review order, listed only BA and AA in the caption. Those documents were later amended to also include KA.

[3]Neither parent appealed the adjudication order.

applied, that the Suquamish tribe in Washington had filed for intervention, and that the Department had made active efforts to reunify the family.

The court held a permanency-planning hearing in June 2020 and changed the goal of the plan to adoption and authorized the Department to file a petition for the termination of parental rights. In reaching this goal change, the court found that the Department had made reasonable efforts to finalize a permanency plan and that Staci and Timothy had not complied with the case plan and orders of the court.

Staci had not attended her September 2019 drug-and-alcohol assessment; had not attended her October 2019 psychological evaluation; and had not completed any drug screens. She had not had stable employment or housing and was currently incarcerated in the Pope County Detention Center.

Timothy had been referred to counseling but was discharged because he never scheduled his intake. Although he completed his psychological evaluation, he did not attend his drug-and-alcohol assessment. The court noted that the Department had not been able to get any random drug screens or conduct home visits and that Timothy had not visited his children. Instead, he would confirm visitation but then fail to show up or answer the Department's calls.

The court then found that the Suquamish Tribe was not an intervenor and ordered that it be removed from the style of the case. However, the Department was ordered to notify the Tribe and verify the status of its intent to intervene. The court also ordered the Department to conduct a home study on the paternal grandmother and noted that the alcoholism of the grandmother's husband should be addressed in the study.

3

In August 2020, the Department filed a petition for termination of parental rights alleging six grounds for termination.[4] As to the best interest of the children, the Department alleged that the children are highly adoptable and that return to the parents' custody could potentially harm the children because neither parent had demonstrated an ability to care for the children or keep them safe.

The court conducted a termination hearing over the course of two days. After hearing all the evidence, the court entered an order terminating the parental rights of Staci and Timothy. The order found that the Department had proved all six grounds for termination. The order further stated that termination was in the best interest of the children; that the children are adoptable; and that the children would be subject to potential harm if returned to Staci and Timothy's care. Additionally, the court found beyond a reasonable doubt that, in light of the qualified expert testimony of Carol Armstrong, the ICWA expert, the Department had made active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that continued custody of the parents or Indian custodian would result in serious emotional or physical harm to the children. Staci and Timothy appeal the termination order, challenging the court's best-interest finding.

II. *Standard of Review*

We review termination–of–parental–rights cases de novo. *Hune v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 543. In order to terminate parental rights, the Department must

---

[4]Since neither parent challenges the grounds for termination, the specific allegations are not set forth in detail.

4

prove that at least one statutory ground exists in addition to a finding that it is in the child's best interest to terminate parental rights. Ark. Code Ann. § 9-27-341 (Supp. 2021); *Kohlman v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 164, 544 S.W.3d 595. The Arkansas Juvenile Code sets forth two factors that must be considered in determining best interest: the likelihood of adoption and potential harm to the child if returned to the parents' custody. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of stability of a permanent home. *Wallace v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 481, at 12, 470 S.W.3d 286, 293.

Here, the trial court determined that the ICWA was applicable to the parties. When the ICWA applies, the trial court must adhere to a more heightened standard. According to the ICWA, the party seeking to terminate parental rights shall satisfy the circuit court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful. 25 U.S.C. § 1912(d). Moreover, the ICWA sets forth more stringent standards for termination of parental rights: testimony of qualified expert witnesses and evidence beyond a reasonable doubt that the continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child. 25 U.S.C. § 1912(f).

Despite this heightened standard in the trial court, our court's review is still de novo, and we will not reverse the trial court's ruling unless its findings are clearly erroneous. *Holmes v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 495, 505 S.W.3d 730. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire

evidence is left with a definite and firm conviction that a mistake has been made. *Sharks v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 435, 502 S.W.3d 569. In determining whether a finding is clearly erroneous, the appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Bryant v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 375, 554 S.W.3d 295.

III. *Analysis*

While both parents challenge the termination order, neither Staci nor Timothy challenge the statutory grounds the trial court relied on to terminate their parental rights.[5] Therefore, both have waived any challenge relating to the statutory grounds. *Benedict v. Ark. Dep't of Hum. Servs.*, 96 Ark. App. 395, 409, 242 S.W.3d 305, 316–17 (2006).

Here, both parents challenge the trial court's best-interest finding. However, they do not directly attack any of the court's findings regarding potential harm or adoptability. Instead, both parents contend that the best-interest determination should be reversed because the court failed to consider relative placement as a less restrictive alternative to termination.

In its termination order, the circuit court found that all three children are adoptable and that the absence of a safe environment for the children created the likelihood of potential

---

[5]The Department suggests that Staci has challenged the abandonment ground for termination. It is not entirely clear that she has done so. But even if she has, a successful argument as to this ground would not result in a reversal because she does not challenge any of the other alternative grounds for termination. Proof of one ground is sufficient to support a termination of parental rights. *Holloway v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 669, 535 S.W.3d 693; *Reid v. Ark. Dep't of Hum. Servs.*, 2011 Ark. 187, 380 S.W.3d 918. When an appellant fails to challenge the trial court's independent, alternative ground for its ruling, we will not reverse. *Carson v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 399.

harm. Because neither Staci nor Timothy challenges the sufficiency of the evidence supporting the statutory grounds, potential harm, or adoptability, this court must affirm these findings. *Benedict*, *supra*.

Turning now to their specific argument, both Staci and Timothy claim that Timothy's sister, Rachel Day (Pineda), was a possible placement for the children. Staci claims that the Department had a duty to locate potential family members for placement but did not do so. Timothy claims that termination was not in the children's best interest because the children were not living in continued uncertainty since they need only await the completion of the ICPC process initiated by his sister. He, in essence, does not challenge the termination; rather, he merely claims that termination was premature. To address these arguments, we turn our attention to the evidence before the trial court.

Throughout the proceeding, the trial court was made aware that Timothy was a member of the Suquamish tribe and that the ICWA was applicable to the children. The court ordered the Department to consider the maternal grandmother as a possible relative placement for the children but eventually determined that she would not be an appropriate placement because she was facing felony charges.

Shortly before the termination hearing, Timothy's sister Rachel surfaced for the first time even though the children had been in the custody of the Department for over sixteen months. She testified at the termination hearing that she is twenty-eight years old with four children of her own. She is married, and her husband is in the military and works in a missile silo. At the time of her testimony, her husband was deployed and out of communication with her. Accordingly, he was not aware of her interest in the children or

that she had begun the ICPC process. Rachel claimed to be a member of the Suquamish Tribe[6] and expressed an interest in having the children placed with her even though she had not seen the children for at least three years, and her previous contact with the children was approximately a year prior to that. She stated that she only recently came forward as a potential placement for the children after she discovered that her mother is not eligible. While she was interested in placement, she was hesitant to agree to adoption because she had not been able to speak with her husband about it.

Finally, the court heard from Carol Armstrong, the ICWA expert and a child-protective-services investigator for the Suquamish Tribal Child Welfare Department. She stated that due to the parents' reported lack of compliance with the court-ordered case plans, inconsistency in visitation, and sporadic and inconsistent effort, it was the opinion of the Tribe that the parents are not capable of providing a stable, safe, and suitable home for the children or that either parent will be able to provide the minimum standard of care for them. She stated that as a result, the Suquamish Tribe did not have a factual basis to oppose the termination of parental rights as to either parent. She also stated that the Tribe did not have an available, suitable, or approved foster home or relative placement for the children at that time. However, she did state that the Tribe would support the Department's pursuing preferred placement with the children's paternal aunt, Rachel, if she is subsequently cleared for placement. She further affirmed that, on the basis of the information she had received,

---

[6]Carol Armstrong could not confirm Rachel's status with the tribe. She stated that the name "Rachel Day" was not recorded on her current enrollment list but indicated that Rachel might be listed under a different name.

she believed the Department had made active efforts at reunification. The court then stated that Armstrong had testified that the children's current placement was preferred by the Suquamish Tribe due to the placement being fictive kin, but if Rachel Day were to be found fit and appropriate, the Tribe would support relative preference over fictive kin.

Case law from this court holds that a trial court is permitted to set termination as a goal even when a relative is available and requests custody. This is because the Juvenile Code lists permanency goals in order of preference, prioritizing a plan for termination and adoption unless the child is already being cared for by a relative, the relative has made a long-term commitment to the child, and termination of parental rights is not in the child's best interest. *Otis v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 28, 538 S.W.3d 870.

We are not persuaded that the court erred in proceeding with termination. At the time of the termination hearing, the ICPC process had only recently begun, and there is no guarantee that the ICPC will come back favorably to Rachel. While Rachel expressed an interest in placement, she did not know that the children had been placed in foster care until the summer of 2020 and had not even spoken to her husband about potentially adopting the children. More importantly, the children were still in the Department's custody, and they needed permanency. While Rachel may have been an option for future placement or adoption, she was not a viable permanent or stable option at the time of termination. *See Phillips v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 383, at 14, 585 S.W.3d 703, 710 (citing *Scrivner v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 316, at 5, 497 S.W.3d 206, 209.) Finally, the court did not rule out potential placement of the children with Rachel. The

9

court stated on the record that it anticipated there would be a future hearing to consider placement and/or adoption by Rachel once the ICPC report was received.

Additionally, Staci argues that termination was not in the best interest of the children because the Department failed to provide her with her statutorily required visitation while she was incarcerated and that the failure to do so negatively affected her relationship with the children. She claims that Arkansas Code Annotated section 9-27-325(o)(2)(D)(i) (Supp. 2021) requires the court to provide at least four hours of supervised visitation unless the court finds that visitation is not in the best interest of the juvenile or that it would impose an extreme hardship on one of the parties. Ark. Code Ann. § 9-27-325(o)(2)(D)(ii). She argues this was not done.

She further argues that the Department failed to make reasonable efforts as defined by Arkansas Code Annotated section 9-27-303(48)(v)(a) and (b) (Supp. 2021). Arkansas Code Annotated section 9-27-303(48)(v)(b) states that, in making a reasonable effort as to an incarcerated parent, the department shall (1) involve an incarcerated parent in case planning; (2) monitor compliance with services offered by the Division of Correction to the extent permitted by federal law; and (3) offer visitation in accordance with the policies of the Division of Correction if visitation is appropriate and in the best interest of the child. She notes that the Department did not attempt to provide any visitation to her while she was incarcerated.

Claiming the necessary statutory services were not offered to the family throughout the case, Staci contends that a best-interest finding cannot be supported by the evidence. She asserts that a best-interest finding may include whether continued contact with the

parent would be beneficial and that the Department's failure to allow visitation adversely affected the children's relationship with her.

We are unable to address these arguments. Staci never challenged or appealed the court's findings in any of its intermediate orders that supervised visitation had been provided or that the Department had made reasonable efforts, and she did not make these specific statutory arguments to the trial court at the termination hearing. As such, they are not preserved for review on appeal. *See Locke v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 385, 608 S.W.3d 612; *Elliott v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 526, 565 S.W.3d 487.

Moreover, the court found that the children are adoptable and would be subjected to potential harm if returned to Staci and Timothy because there was no safe environment to which the children can return, and Staci does not challenge either of those factors. Admittedly, a court, in its discretion, *may* also consider other factors such as those discussed in *Phillips v. Arkansas Department of Human Services*, 2019 Ark. App. 383, 585 S.W.3d 703.[7] Despite Staci's assertion to the contrary, a court's failure to consider such discretionary factors does not warrant reversal. By statute, a court must consider only two factors—the likelihood of adoptability and potential harm—in making a best-interest determination. *See Ring v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 146, at 11, 620 S.W.3d 551, 558. Thus,

---

[7]Such "other factors" include the preservation of the children's relationship with a grandparent; the severance of child support from a parent; whether a less drastic measure could be employed such as a no-contact order or supervised visitation; whether the children are living with a relative and not in an indeterminate state that is working against them; and whether the children are living in continued uncertainty.

11

given our de novo review of the record, we cannot conclude that the trial court's best-interest determination was clearly erroneous.

Finally, Staci argues that the Department violated her due-process rights when she was "ignored and forgotten" while incarcerated. Staci did not obtain a ruling from the trial court on this issue. Thus, it is not properly before us on appeal.

In light of the foregoing and after a de novo review, we are not left with a definite and firm conviction that a mistake has been made. Therefore, we affirm the order terminating parental rights.

Affirmed.

ABRAMSON and BARRETT, JJ., agree.

*Dusti Standridge*, for separate appellant Staci Aslakson.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for separate appellant Timothy Aslakson.

*Andrew Firth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.