Cite as 2023 Ark. App. 99

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-22-621

| | |
|---|---|
| CLAIRE HOOKER | Opinion Delivered February 22, 2023 |
| APPELLANT | |
| | APPEAL FROM THE UNION COUNTY CIRCUIT COURT |
| V. | [NO. 70JV-21-38] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE EDWIN KEATON, JUDGE |
| APPELLEES | |
| | AFFIRMED |

**CINDY GRACE THYER, Judge**

Claire Hooker appeals an order of the Union County Circuit Court terminating her parental rights to her daughter. On appeal, she does not challenge the circuit court's determination that there was sufficient evidence to support the statutory grounds necessary for termination. Instead, she argues that the circuit court erred in finding that termination was in the child's best interest; specifically, she contends that the court erred in not considering whether termination was the least restrictive disposition available. Because her argument is not preserved for our review, we affirm.

## I. *Factual and Procedural Background*

The Arkansas Department of Human Services (DHS) took Claire's two children, Minor Child 1 (MC1) (born 04/20/18) and Minor Child 2 (MC2) (born 02/27/17), into custody on May 5, 2021, after Claire was arrested on multiple theft charges; and her

mother, with whom Claire had left the children, was also arrested on drug charges. DHS's petition for emergency custody and dependency-neglect named James Moore as the parent of both children because he was married to Claire at the time of their births; however, the petition also named Joshua Larry as MC1's putative parent. After taking a seventy-two-hour hold on both children, DHS placed MC2 with Moore and released the hold on him.[1] In addition, Joshua's parents, Pamela and Jason Willis, completed paperwork to be considered as a provisional placement for MC1, and they later became MC1's foster placement.

The circuit court entered an ex parte order for emergency custody on May 7, placing MC1 in DHS's custody. A May 28 order found probable cause that the emergency conditions that necessitated removal of MC1 continued.[2] MC1 was adjudicated dependent-neglected in an order entered on July 21, 2021. At that time, the goal of the case was

---

[1]Claire's arguments on appeal pertain solely to the termination of her parental rights as to MC1. During the course of this case, MC2 was placed in James's permanent custody, and the case was closed as to him. In addition, Moore executed a voluntary consent to the termination of his parental rights to MC1. He is not a party to this appeal.

[2]We briefly address the timeline of this case as it relates to Joshua Larry, even though he is not a party to this appeal, because MC1 was put in a foster placement with his parents. The probable-cause order directed Joshua to submit to DNA testing to determine paternity as to MC1. In the adjudication order, the court reserved the issue of whether Joshua had presented evidence proving that he had established significant contacts with MC1. In the September review order, the court received a DNA report showing a 99.9997 percent probability that Joshua is MC1's biological father. The court did not make a finding regarding Joshua's legal status as a parent at that time, however. At the permanency-planning hearing, the court found that Joshua, as a putative parent, had failed to appear before the court and had failed to show any interest in MC1. Because he had not established paternity, he was dismissed from the case.

established as reunification, and Claire was ordered to complete various services. The case was reviewed in September 2021. At that time, the court found that Claire had partially complied with the case plan and that the goal of the case remained reunification. Subsequent review orders in December 2021 and March 2022 made essentially the same findings.

A permanency-planning hearing was held in April 2022. The court determined that the goal of the case should be authorizing a plan for adoption, noting that MC1 was "being cared for by a relative and termination of parental rights is in [her] best interest." The court found that Claire had not made significant, measurable progress toward achieving the goals of the case and had not worked diligently toward reunification. The court cited Claire's incarceration, her lack of suitable housing, and her noncompliance with the case plan and court orders as the safety concerns that prevented MC1 from being returned to her custody.

DHS filed a petition to terminate Claire's parental rights to MC1 on May 9, 2022, alleging twelve months failure to remedy, subsequent other factors, and aggravated circumstances as grounds. A termination hearing was held on June 20, 2022. Ieshia Howard, the DCFS caseworker, testified about the circumstances surrounding MC1's removal from Claire's custody. Howard then spoke about the services DHS had offered Claire throughout the case, including parenting classes, a psychological examination, counseling, a drug assessment, random drug screens, worker contacts, foster care, transportation, and supervised visitation. Claire completed a substance-abuse assessment,

3

which recommended that she complete a sixteen-week outpatient program and then continue in group and individual sessions; however, Claire did not comply with that recommendation and attended only four of the sixteen sessions. Although Claire started inpatient treatment, she left the program within twenty-four hours. She also failed to complete her parenting classes.

Howard noted that Claire had been arrested on March 9, 2022, and had therefore been in jail at the time of the permanency-planning hearing. Claire was released from jail on June 7, 2022, and contacted Howard on June 17 to discuss the termination hearing. According to Howard, Claire "asked if it can be guardianship instead of adoption." She did not elaborate any further on this comment, however.

Howard also addressed the other services recommended and provided by DHS. Claire's psychological evaluation recommended counseling, and while she started counseling, she quit going prior to her arrest and had her file with the counseling office closed. As for visitations, Claire had missed sixteen of the twenty-five potential visits since the beginning of the year. When asked about what potential harm could befall MC1 if returned to Claire's custody, Howard explained that Claire lacked suitable housing, there would be possible drug exposure, and there was the possibility that she could be incarcerated again.[3]

---

[3]On cross-examination, Howard clarified that Claire had pending charges in Calhoun County for furnishing prohibited articles to a prisoner. In addition to the theft charges that opened the DHS case, Claire had also been arrested the previous August for hindering apprehension and had new charges for forgery and theft of property.

Haley Callison, an adoption specialist, testified that there are no medical or physical barriers to adoption for MC1. A data match showed 330 potential families, and in addition, her paternal grandparents, the Willises, wanted to adopt her.

Claire also testified at the hearing about her housing situation, her employment, and her compliance with the case plan. She conceded that she had not completed any of the components of the case plan, admitting that she had gone to only one parenting class and had left rehab after twenty-four hours. She agreed that MC1 is adoptable and that her current placement is a good one for her. She denied that termination is in MC1's best interest, however, asserting only that the child would be safe with her.

At the conclusion of the hearing, the court granted DHS's petition to terminate Claire's parental rights, finding that she had not availed herself of any of the services DHS had provided. The court noted she had not visited with MC1, did not complete treatment or individual counseling, had been incarcerated and still had pending criminal charges, and had not gotten herself to a point where the court believed MC1 could be safely returned to her. The court also found that aggravated circumstances existed, concluding that further services would not result in successful reunification because of her lack of participation and cooperation with the case plan.

The court reiterated these findings in its subsequent written order terminating Claire's parental rights. The court also found that MC1 is adoptable, citing Claire's own testimony, and that she would be subjected to potential harm if returned to Claire's

custody because of the inappropriate nature of her home. Claire filed a timely notice of appeal.

## II. *Standard of Review*

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. *Houseman v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 227, 491 S.W.3d 153. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the juvenile will be adopted and of the potential harm caused by returning custody of the child to the parent. *Id.* Statutory grounds and a best-interest finding must be proved by clear and convincing evidence, which is the degree of proof that will produce in the fact-finder a firm conviction regarding the allegation sought to be established. *Id.*

We review termination-of-parental-rights cases de novo. *Gilbert v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 256, 599 S.W.3d 725. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

## III. *Discussion*

As noted above, Claire does not challenge the circuit court's findings regarding the statutory grounds for termination, nor does she challenge the court's best-interest findings

regarding adoptability and potential harm.[4] Thus, any challenge relating to these grounds is waived. *See Aslakson v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 460, 637 S.W.3d 311; *Phillips v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 383, 585 S.W.3d 703.

Instead, on appeal, Claire argues that the circuit court erred in finding that termination of her parental rights was in MC1's best interest because permanent custody with Pamela and Jason Willis would have been a less restrictive alternative to termination. In addition, she argues that the circuit court should have considered "other best-interest factors," such as those described in *Phillips*, *supra*,[5] in deciding whether termination was in MC1's best interest.

Claire failed to raise this argument before the circuit court, however, and we are therefore precluded from considering it on appeal. *See Jackson v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 319, at 5 (rejecting mother's family-relationship argument when she did

---

[4]Although Claire's point on appeal asserts that the court erred in finding that she posed a risk of harm to her daughter, this argument is not developed in the remainder of her brief and is therefore considered abandoned. *See Benedict v. Ark. Dep't of Hum. Servs.*, 96 Ark. App. 395, 409, 242 S.W.3d 305, 316 (2006).

[5]In *Phillips*, 2019 Ark. App. 383, at 12, 585 S.W.3d at 709–10, this court noted that while a circuit court *must* consider the likelihood of adoption and potential harm in determining whether termination is in a child's best interest, it *may* consider other factors, such as

> the preservation of the children's relationship with a grandparent; the severance of child support from a parent; whether a less drastic measure could be employed such as a no-contact order or supervised visitation; whether continued contact with the parent would be beneficial to the children if or when the children are living with a relative and not in an indeterminate state that is working against them; and whether the children are living in continued uncertainty.

.

not raise it to the circuit court and noting that "[e]ven in a case involving termination of parental rights where constitutional issues are argued, we will not consider arguments made for the first time on appeal." (citing *Myers v. Ark. Dep't of Hum. Servs.*, 91 Ark. App. 53, 208 S.W.3d 241 (2005)); *see also Cole v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 481, at 11–12, 611 S.W.3d 218, 224–25 (mother's failure to raise less-restrictive relative-placement argument to the circuit court precluded consideration of the issue on appeal).

In this case, although caseworker Howard mentioned that Claire had asked whether "it can be guardianship instead of adoption," Claire herself never presented the argument to the circuit court, and the circuit court never ruled on the issue. Accordingly, it is not preserved for our review. *See Mitjans v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 472, 561 S.W.3d 747 (issues not raised below are not preserved for appeal).

Affirmed.

WOOD and BROWN, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.