Cite as 2024 Ark. App. 323

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV-23-834

| | |
|---|---|
| STONEY LEE BARNOSKIE II<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | Opinion Delivered May 15, 2024<br><br>APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO.17JV-21-10 ]<br><br>HONORABLE MICHAEL MEDLOCK, JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Stoney Barnoskie appeals the Crawford County Circuit Court's order terminating his parental rights to his son, MC1, born January 12, 2021. He argues on appeal that the circuit court erred in finding that termination was in MC1's best interest.[1] We affirm.[2]

The Arkansas Department of Human Services (DHS) exercised a seventy-two-hour hold over MC1 on January 15, 2021, after he was born with methamphetamine in his system

---

[1]The circuit court also terminated the parental rights of MC1's mother, who signed a voluntary consent to termination; however, she is not a party to this appeal.

[2]The circuit court also terminated appellant's parental rights to another child, MC2, in a companion case also being handed down today. *See Barnoskie v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 324.

and was suffering from withdrawals, causing him to be placed in the NICU. His mother, Dawn Stockman, did not participate in bonding with MC1, and she refused to go to a drug-treatment facility that would allow her to bring MC1 with her. There was an open protective-services case with the family at the time of MC1's removal. MC1's two siblings, MC2 and MC3, were already in temporary guardianship stemming from an April 2020 incident. DHS filed a petition for dependency-neglect and emergency custody on January 19. The circuit court entered an ex parte order for emergency custody the same day. MC1 was adjudicated dependent-neglected in a March 1 order due to Stockman's stipulation of neglect. The goal of the case was reunification with a concurrent goal of placement with fictive kin. Appellant was found to be MC1's father in the review order entered on September 9. He was joined as a necessary party the following day.

The permanency-planning hearing (PPH) took place on December 9. In the order filed on January 12, 2022, the circuit court found that the case goal should remain the same but noted that Stockman was making significant, measurable progress. MC1 was to begin a trial home placement with Stockman, according to the order. Appellant was also found to be following the case plan and orders of the court. In the September 21 review order, the case goal was reunification with a concurrent goal of guardianship. The circuit court found that the parents were not in compliance. A second PPH was held on February 15, 2023. In the order entered the same day, the circuit court found that the goal of the case should be changed to termination of parental rights with concurrent goals of reunification with

2

Stockman or guardianship. The order noted that appellant had not seen the children during the past review period and that he had not engaged in case-plan services.

DHS filed a petition for termination of parental rights on April 4. As to appellant, it alleged that his parental rights to MC1 should be terminated on the following grounds: (1) twelve-months' failure to remedy (noncustodial parent);[3] (2) subsequent other factors;[4] and (3) aggravated circumstances—little likelihood of successful reunification despite a reasonable offer of services.[5] Appellant was appointed counsel on June 21.

The termination hearing took place on September 20. Zach Fox, the family service worker, testified about the issues that caused removal of MC1 and noted that the family had an open protective-services case due to domestic violence prior to MC1's removal. He stated that the family had been offered twenty to thirty services since 2020 but that those services had been unsuccessful in reuniting the family. He testified that DHS had tried guardianship for six months, but it did not work. According to Fox, MC1 and his siblings had been in the same foster home at all relevant times other than the trial guardianship. Fox said that the foster mothers wished to adopt MC1 and his siblings. He opined that delaying permanency for MC1 would result in potential harm because based on the case's history, there was no indication that reunification would ever be possible. Fox stated that MC1 and

---

[3]Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(b)* (Supp. 2021).

[4]Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*.

[5]Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)*.

his siblings are in fictive-kin placement. He testified that the parents were asked on numerous occasions to provide DHS with additional names for placement and that either the homes were not appropriate or no names were given. He said that DHS reached out to the Cherokee Nation to find a placement, but there were no viable options available. Fox testified that appellant would not drug screen, and anytime appellant thought he would be tested, he would not show up. He said that it was harmful to place the children in a home where parents are in the thrust of a horrible drug addiction.

Bryan Walkabout testified as an expert for ICWA purposes. He said that he is a member of the Cherokee Nation. He opined that return of MC1 to his parents would likely result in serious emotional or physical harm because the parents relapsed late in the case and that visitation had been sporadic. He said that DHS's active efforts to reunify the family had failed and that it was in MC1's best interest that parental rights be terminated. He admitted that MC1's current placement was not ICWA compliant but said that a September 14 email from the Cherokee Nation stated there were no available homes to place the child in, so there is good cause to deviate.

Appellant testified that he thought he had participated in every service that had been offered to him. He said that he had not been showing up for visitation because he was trying to pay for his apartment. He stated that he was working six days a week, twelve hours a day. Appellant testified that his "dad said [that] he would like to be considered and he would subject [himself] to a background [check] or, you know, a home, you know, placement or whatever they do." He said that his dad is a member of the Cherokee Nation and wanted to

4

volunteer for placement. Appellant stated that he had last used drugs a couple of months prior, which was after his completion of drug rehab. He admitted that he has only seen his children two to three times within the past three months.

The circuit court granted DHS's petition to terminate appellant's parental rights to MC1, based on all the grounds pled against appellant. The termination order was filed on October 2. The circuit court found that termination of appellant's parental rights is in MC1's best interest because MC1 is adoptable, and he would face potential harm if returned to appellant because appellant had not diligently worked to correct the conditions that prevented placement of MC1 in his home. The circuit court also noted that MC1 had been in foster care for over two years and deserved permanency. Appellant filed a timely notice of appeal on October 17, challenging the circuit court's best-interest finding.

We review termination-of-parental-rights cases de novo.[6] In order to terminate parental rights, DHS must prove that at least one statutory ground exists in addition to a finding that it is in the child's best interest to terminate parental rights.[7] The Arkansas Juvenile Code sets forth two factors that must be considered in determining best interest: the likelihood of adoption and potential harm to the child if returned to the parents'

---

[6]*Aslakson v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 460, 637 S.W.3d 311.

[7]Ark. Code Ann. § 9-27-341.

custody.[8] Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from a parent's continued drug use.[9]

ICWA was applicable in this case because appellant is a member of the Cherokee Nation, making MC1 an Indian child. When the ICWA applies, the circuit court must adhere to a more heightened standard. According to the ICWA, the party seeking to terminate parental rights shall satisfy the circuit court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.[10] Moreover, the ICWA sets forth more stringent standards for termination of parental rights: testimony of qualified expert witnesses and evidence beyond a reasonable doubt that the continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child.[11] Despite this heightened standard in the circuit court, our court's review is still de novo, and we will not reverse the circuit court's ruling unless its findings are clearly erroneous.[12] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has

---

[8]Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii).

[9]*Tillman v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 119.

[10]25 U.S.C. § 1912(d).

[11]25 U.S.C. § 1912(f).

[12]*Aslakson*, *supra*.

6

been made.[13] In determining whether a finding is clearly erroneous, the appellate court gives due deference to the opportunity of the circuit court to judge the credibility of witnesses.[14]

Appellant does not challenge the statutory grounds the circuit court relied on to terminate his parental rights. Therefore, he has waived any challenge relating to the statutory grounds.[15] Although appellant challenges the circuit court's best-interest finding, he does not directly attack the court's findings regarding adoptability or potential harm. Instead, he argues that termination was not in MC1's best interest because the circuit court failed to consider relative placement as a less restrictive option and one in compliance with ICWA. Appellees argue and we agree that this argument is not preserved for our review. Appellant failed to make this less-restrictive argument to the circuit court, so it is not properly before us.[16]

Even if the argument was properly before us, we would affirm the circuit court. Fox testified that there was no ICWA-compliant placement for MC1, according to the Cherokee Nation. He also stated that the parents had been asked on numerous occasions to provide DHS with names of potential placements and that either the names were not provided, or the names that were provided were not appropriate. Appellant did not mention his father

---

[13]*Id.*

[14]*Id.*

[15]*Id.*

[16]*See Pric v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 140.

7

until the termination hearing. The father was not present at the hearing, and there was no information provided about the father other than that he, too, is a member of the Cherokee Nation. There was no testimony that the father had a relationship with MC1 or that he had taken any steps to secure being considered a placement for MC1. Our case law holds that a circuit court is permitted to set termination as a goal even when a relative is available and requests custody. This is because the Juvenile Code lists permanency goals in order of preference, prioritizing a plan for termination and adoption unless the child is already being care for by a relative, the relative has made a long-term commitment to the child, and termination of parental rights is not in the child's best interest.[17] Here, MC1 was not placed with a relative but was in DHS's custody. Appellant's father did not testify at the hearing, so the only evidence presented that he wanted to be considered for placement came from appellant. MC1 had been in DHS's custody for over two years, and appellant was still not able to take him home. Despite appellant's argument to the contrary, placement with his unnamed father was not a viable permanent or stable option at the time of termination.[18] Accordingly, we affirm.

Affirmed.

BARRETT and THYER, JJ., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

---

[17]*Aslakson*, *supra*.

[18]*Id.*

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.