

SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-13-586

| | | |
|---|---|---|
| | | **Opinion Delivered** October 23, 2013 |
| LORETTA PAINTER | | APPEAL FROM THE CRAIGHEAD |
| | APPELLANT | COUNTY CIRCUIT COURT, |
| | | WESTERN DISTRICT |
| V. | | [NO. 16-JV-06-282] |
| | | |
| | | HONORABLE CINDY THYER, |
| ARKANSAS DEPARTMENT OF | | JUDGE |
| HUMAN SERVICES and MINOR | | |
| CHILD | | AFFIRMED; MOTION TO |
| | APPELLEES | WITHDRAW GRANTED |

## KENNETH S. HIXSON, Judge

Appellant Loretta Painter appeals the April 2013 Craighead County Circuit Court order terminating her parental rights to her eleven-year-old daughter B.P. Her attorney filed a motion to be relieved from representation and a no-merit brief pursuant to *Linker-Flores v. Ark. Dep't of Human Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Rule 6-9(i) of the Rules of the Arkansas Supreme Court and Court of Appeals. Painter was sent a copy of her counsel's motion and brief along with a letter informing her of her right to file pro se points for reversal. She filed pro se points for our consideration. B.P.'s attorney agrees with Painter's attorney that termination of parental rights should be affirmed and that there would be no merit to any appeal. Based on our review of the record, in compliance with the procedures required of us, we affirm the trial court's termination of her parental rights and

grant counsel's motion to withdraw. *See Smith v. Ark. Dep't of Human Servs.*, 93 Ark. App. 395, 219 S.W.3d 705 (2005).

The termination of parental rights involves a two-step process in which the trial court must find that the parent is unfit and that termination is in the child's best interest, considering the likelihood of adoption and the potential harm if the child is returned to the parent's custody. *Murray v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 431, __ S.W.3d __. The trial court must make findings that meet the clear-and-convincing level. *Rossie-Fonner v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 29, 388 S.W.3d 38. On appeal, we reverse those findings only if they are clearly erroneous, meaning that we are left with a distinct and firm conviction that a mistake was made. *Id.* We give due deference to the credibility determinations made by the trial court. *Id.*

The only adverse ruling to review is the decision to terminate Painter's parental rights. Her attorney asserts, and we agree, that an appeal would be wholly frivolous. Painter had a long history with the Department of Human Services (DHS).[1] In the most recent case leading to termination of her parental rights to B.P., the child was taken into custody in November 2011, following Painter's having cut her wrists, requiring more than thirty stitches and

---

[1]DHS intervened to take Painter's older child N.P. at least twice (in 1996 and 1998) for failure to appropriately care for him. Subsequent to B.P.'s birth, DHS intervened to take custody of Painter's children once in 2005, when Painter was arrested for terroristic threatening and disorderly conduct. Her children were taken into custody for several months in 2006–2007 because Painter had been arrested for shoplifting; tested positive for marijuana and cocaine; and had left her children, at that time ages ten and four, alone at their residence, leading to a child-endangerment charge. Painter was provided several drug-and-alcohol treatment programs, transportation, counseling, and parenting classes, among other services.

SLIP OPINION

hospitalization. Hospital personnel believed this to be a suicide attempt, although Painter denied it. Painter had persistent mental-health issues—depression, anxiety, borderline personality disorder—and an alcohol problem, which led to problems with living a law-abiding life and being a fit parent to her children.[2] B.P.'s older brother N.P. was ultimately placed in the permanent custody of his grandparents, primarily because he was nearing the age of majority and not adoptable. B.P.'s situation was treated differently due to her young age and adoptability.

B.P. was adjudicated dependent-neglected in February 2012. A review in late February 2012 showed that Painter was complying with the case plan by attending parenting classes, submitting to and passing random drug screens, attending counseling at Mid–South, and maintaining stable housing.

The evidence indicated that Painter was generally cooperative when sober, tested negative for illicit-drug use, and attended visits with her daughter when she was not in jail. She was not employed but instead received disability income of $639 per month, and she lived in an apartment paid by government support. Painter was discharged from Mid–South counseling because she missed her appointments. She began in-home counseling through Southern Counseling.

---

[2]A psychological evaluation indicated that in the years preceding this case, Painter had tried to commit suicide at other times, had abused cocaine and marijuana, and had been charged with a DWI. The report noted that Painter had a "significant history of substance abuse," "problems with anger," "unstable and intense personal relationships," and needed "emotion regulation and coping skills to deal with stressful situations."



Because of her progress during the first few months, a trial placement of B.P. was initiated in May 2012, but it ended in June 2012, when Painter was arrested for DWI-second offense. B.P. was in the car. Painter later admitted that she was not ready to have her daughter at that time.

By September 2012, Painter wanted to attend a long-term residential treatment program called "Project New Start," which would treat both her alcohol and mental–health issues. After a review hearing in September 2012, the trial court approved her request and ordered the fees to be paid by DHS, and the trial court noted that her completion of this program was essential to obtain reunification. She entered the program on September 19 but left on October 3, 2012, because according to her DHS did not pay for the treatment. DHS reported that the facility had no idea why Painter simply walked away from treatment.

DHS filed a petition to terminate Painter's parental rights in January 2013 alleging two bases: (1) that the child had been out of her mother's custody for twelve months and that, despite meaningful efforts to rehabilitate the parent and correct the conditions that caused removal, the parent had not remedied the conditions; and (2) that subsequent to the filing of the petition for dependency-neglect, other factors or issues arose that demonstrated that returning the child to her mother would be contrary to the child's health, safety, or welfare, and that despite the offer of appropriate reunification services, the mother manifested incapacity or indifference to remedy the situation, preventing return of the child to the parent. Ark. Code Ann. § 9–27–341(b)(3)(B)(i) and (vii) (Supp. 2011). The termination hearing was conducted in February and March 2013.

The court took testimony from DHS personnel to substantiate the history of this case from DHS's point of view, which the trial court deemed credible. Painter testified in her own defense. Painter said she chose to attend another treatment program in January 2013, which she completed in February 2013. DHS did not believe this program to be appropriate because it was not equipped to handle her dual diagnoses—mental-health problems and alcohol addiction. Moreover, DHS was of the opinion that Painter completed this short-term treatment program in order to avoid jail time for her second DWI. The trial court agreed with DHS's opinion. Painter testified that she loved her daughter; that she was an alcoholic; that she did not think she needed more treatment but she was attending counseling with another source; and that she was ready to have her daughter. She added that she left Project New Start because DHS did not pay for it. The trial court ultimately made a finding that Painter was not credible.

DHS personnel stated that B.P. was adoptable, bright, mature, without medical or emotional problems, and aware of her mother's persistent mental and alcohol problems. Although she loved her mother, B.P. expressed to DHS staff an expectation that her mother just could not maintain appropriate parenting behavior.

In closing arguments, Painter's trial attorney acknowledged that there was sufficient proof of both grounds to terminate, arguing only that it was not in the child's best interest to terminate parental rights, considering that her parental rights to her teenage son were not being terminated. The trial court found that both grounds had been proved. In sum, the trial court found that Painter was unable or unwilling to maintain sobriety or stable mental health,

which put her daughter in harm's way. There could be no meritorious argument to be raised on appeal to reverse the trial court's finding of at least one ground to support terminating her parental rights.

In addressing the child's best interest, the trial court found that B.P. had a high likelihood of being adopted and a potential of harm to her if returned to her mother's custody due to Painter's long-standing mental health and addiction problems. The best-interest inquiry is conducted in broad terms, and a trial court is not required to identify a particular harm. *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, 379 S.W.3d 703. A parent's past conduct often provides a good indication of what the future may hold. *Stephens v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 249, __ S.W.3d __.

In her thirty-page pro se points for reversal, Painter generally describes the factual history of this case from her point of view. She complains that DHS staff failed to help her financially, were "manipulative," and lied to her. She asserts that inpatient-rehabilitation staff were rude to her and lied to her. She asserts that it was wrong to terminate her rights to B.P. when her rights to her son were left intact. In sum, she presents a reiteration of her testimony before the trial court, which specifically deemed her not credible. *Barber v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 381. There is no issue of arguable merit to present on appeal.

Affirmed; motion to withdraw granted.

WALMSLEY and BROWN, JJ., agree.

*Deborah R. Sallings*, Arkansas Public Defender Commission, for appellant.

No response.