SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-16-558

| | |
|---|---|
| | **Opinion Delivered** OCTOBER 19, 2016 |
| STEFANIE BAIR | |
| | APPEAL FROM THE FAULKNER |
| | COUNTY CIRCUIT COURT |
| APPELLANT | [NO. 23JV-14-554] |
| | |
| V. | HONORABLE DAVID M. CLARK, |
| | JUDGE |
| ARKANSAS DEPARTMENT OF | |
| HUMAN SERVICES AND MINOR | AFFIRMED |
| CHILDREN | |
| APPELLEES | |

## DAVID M. GLOVER, Judge

Stefanie Bair appeals from the termination of her parental rights to her two children, R.B. and D.B. She contends 1) the trial court erred "in refusing to consider the argument that a court may terminate the parental rights of only one parent based on the [court's] misapprehension that the applicable statutory provision was unconstitutional," and 2) the trial court erred in finding it was in the children's best interest to terminate her rights where the evidence of adoptability was questionable. We affirm.

The Arkansas Department of Human Services (DHS) exercised an emergency hold on the children because of a hotline call alleging that Billy Brown, the children's putative father, had sexually abused R.B. Following a hearing, the children were adjudicated dependent-neglected by order entered on February 18, 2015. Custody was continued with DHS, and a goal of reunification with Stefanie was set with a concurrent goal of adoption. On January 7, 2016, DHS filed a petition to terminate parental rights. Following a hearing

on the petition, the trial court entered its March 16, 2016 order terminating the parental rights of both parents. Billy was cleared of the sexual-abuse charges in a criminal trial, but he was not cleared of those allegations in the DHS case. In addition, a major concern that contributed to the termination of Stefanie's parental rights involved her continued relationship with Billy throughout the case. Only Stefanie is involved in the instant appeal.

In terminating parental rights, the trial court must make two findings by clear and convincing evidence: at least one statutory ground must exist, and termination must be in the best interest of the child. *Hamilton v. Arkansas Dep't of Human Servs.*, 2016 Ark. App. 420; Ark. Code Ann. § 9-27-341 (Repl. 2015). In making a "best interest" determination, the trial court must consider two factors: the likelihood that the child will be adopted and the potential harm to the child if custody is returned to a parent. *Hamilton, supra*; Ark. Code Ann. § 9-27-341. Clear and convincing evidence is such a degree of proof that produces in the fact-finder a firm conviction regarding the allegation to be established. *Hamilton, supra*. Our review of the termination of parental rights is de novo. *Id.* Our inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous, and we leave to the fact-finder credibility determinations. *Id.* A finding is clearly erroneous when, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *Shaffer v. Arkansas Dep't of Human Servs.*, 2016 Ark. App. 208, 489 S.W.3d 182.

In terminating Stefanie's parental rights, the trial court found as grounds "subsequent factors" (Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(a)) and "aggravated circumstances" (Ark.

Code Ann. § 9-27-341(b)(3)(B)(ix)(a)). With respect to the "subsequent factors" ground,

the termination order provides in pertinent part,

> Since this case opened, Stefanie Bair has chosen to remain in a romantic relationship with the man who sexually abused her daughter. At times during this case, Stefanie has testified that she did not believe that Billy molested their daughter. At other times, she has testified that she believes her daughter. Stefanie wrote a statement to the Faulkner County Sheriff's Office in July 2015 that she believed that Billy was a good father and that he was framed for committing sexual abuse. Stefanie was found to have lied to the Court in September 2015 about not having contact with Billy Brown, who she had visited in excess of thirty-two (32) times while he was incarcerated awaiting trial on charges of raping their daughter. When Billy was released from jail, he and Stefanie immediately moved in together. Stefanie testified at the permanency planning hearing in December 2015 that she intended to remain in a relationship with Billy. When asked how she could ensure that her children would be safe if they were living in the home with Billy, Stefanie testified that her plan was to "keep a good eye" on them. At the termination hearing, Stefanie testified that she continued to live with Billy and that she would keep the children safe by putting a lock on their bedroom door and by sleeping in the same bed with her seven year old daughter and five year old son.
>
> There are no additional services that the Court could have ordered or that DHS could have offered to remedy the subsequent issues in this case. If Stefanie Bair is in a relationship with and living with Billy Brown, the juveniles cannot be returned to Stefanie Bair's custody. Returning the juveniles to Stefanie's custody would mean returning [R.B.] to the custody of the man who sexually abused her. The Court finds that [R.B.] deserves to have a life free from the man who sexually abused her.

With respect to the "aggravated circumstances" ground, the termination order

provides in pertinent part,

> The Court makes a finding that [R.B.] was chronically abused, in that she disclosed three different perpetrators of sexual abuse at only six years old. The mother and father have both testified that they believe that Phillip Turner, a registered sex offender, molested their daughter while he was living in their home. The Court further finds that [R.B.] was sexually abused by her father, Billy Brown; by Phillip Turner, a registered sex offender living in the home; and by [D.], a teenage cousin. The Court finds that there is little likelihood that services to the family will result in a successful reunification, as Billy Brown is incapable of remedying the cause of removal and because Stefanie Bair continues to be in a romantic relationship with Billy, there are no services that could be provided that would result in a successful reunification.

For her first point of appeal, Stefanie contends the trial court erred in refusing to consider the argument that a court may terminate the parental rights of only one parent because the court mistakenly believed the applicable statutory provision was unconstitutional. While we agree that the trial court had no basis for spontaneously expressing its view that Arkansas Code Annotated section 9-27-341(c)(2)(B) was unconstitutional, we disagree that the court's opinion in that regard provides a basis for reversal in this case.

After both sides had rested, the trial court heard arguments from Stefanie's counsel concerning why some of the alleged grounds for termination did not apply to Stefanie and arguing that the trial court had the option of terminating Billy's parental rights while leaving Stefanie's in place. During this colloquy between the trial court and counsel, the trial court spontaneously expressed its view that Arkansas Code Annotated section 9-27-341(c)(2)(B), which allows for the termination of only one parent's parental rights, was unconstitutional. None of the parties made such an argument; the trial court just expressed its unsolicited opinion. Stefanie now argues that in doing so, the trial court "absolutely foreclosed any consideration of anything less than the termination of Stefanie's parental rights, including possibly placing the children with Stefanie's mother, Rebecca Harvey." We disagree.

While it is unclear why the trial court spontaneously expressed its opinion about the constitutionality of section 9-27-341(c)(2)(B) when none of the parties had raised such an issue, it is abundantly clear that the trial court's termination of Stefanie's parental rights was rooted in both statutory grounds set out in the termination order and supported by the facts and rationale explained therein. The termination order makes no mention of section 9-27-

341(c)(2)(B), nor the trial court's position concerning its constitutionality. It is also clear the trial court's comments from the bench did not factor into its final rationale for ordering the termination of Stefanie's parental rights, and consequently they cannot provide a basis for reversal.

For her remaining point of appeal, Stefanie contends the trial court erred in finding it was in the children's best interest to terminate her rights "where the evidence of adoptability was questionable and where there was insufficient evidence of potential harm to the children if returned to her custody." We disagree.

As mentioned previously, in determining if termination is in a child's best interest, the trial court is to consider the potential for harm if the child is returned to the parent's custody and the likelihood of the child being adopted. Within this point, Stefanie does not challenge the trial court's finding of statutory grounds for termination, but instead challenges the best-interest finding. We find no error.

Regarding adoptability, the trial court had before it testimony that fifty-seven potential families matched the children's characteristics, i.e., two Caucasian siblings, one who was the victim of sexual abuse and the other having developmental delays; that R.B. and D.B. were adoptable; that the children had been well-behaved and helpful since entering foster care; that the foster mother would adopt them herself if not for her age and lifestyle; that they had thrived in the foster mother's home and had benefitted from therapies and services; and that DHS had succeeded in finding families in the past for children similar to R.B. and D.B.

As to potential harm, it was the initial sexual abuse of R.B. by Billy Brown that initiated this case. The trial was concerned that Stefanie maintained her relationship with Billy throughout the case. Her plans for protecting the children if she and Billy had been allowed to retain their parental rights were as follows: she and Billy would sleep in different rooms; the children would stay with her; she would lock her bedroom door; and she would never leave the children alone. Further, the trial court specifically found that Stefanie had been less than honest with DHS and the court about her continued relationship with Billy after the abuse allegations had come to light. A parent's past conduct often provides a good indication of what the future may hold. *Painter v. Arkansas Dep't of Human Servs.*, 2013 Ark. App. 602. The potential for harm was clear.

Affirmed.

GLADWIN, C.J., and VIRDEN, J., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, Dependency-Neglect Appellate Division, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.