Cite as 2022 Ark. App. 306

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-22-88

|  |  |
|---|---|
| CHASITY DOLLINS | **Opinion Delivered** August 31, 2022 |
| APPELLANT | APPEAL FROM THE GREENE COUNTY CIRCUIT COURT |
| V. | [NO. 28JV-20-101] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE MARY LILE BROADAWAY, JUDGE |
| APPELLEES | |
| | AFFIRMED |

## LARRY D. VAUGHT, Judge

Chasity Dollins appeals the order entered by the Greene County Circuit Court terminating her parental rights to three of her children. On appeal, Dollins challenges the circuit court's best-interest finding. We affirm.

On June 24, 2020, the Arkansas Department of Human Services (DHS) exercised an emergency hold on Dollins's four children—LT1 (DOB January 23, 2014), BT (DOB July 29, 2015), GT (DOB May 15, 2018), and LT2 (DOB September 1, 2019)—on the bases of environmental neglect and Dollins's drug use. The affidavit of a DHS caseworker attached to the petition states that DHS has a history with Dollins's family[1] that includes three unsubstantiated claims: (1) inadequate supervision on July 31, 2017; (2) inadequate food, failure to protect,

---

[1]Billy Thomas was found to be the putative father of BT, GT, and LT2. Bubba Sullivan was found to the be the father of LT1. Neither Thomas nor Sullivan is involved in this appeal.

substance misuse, inadequate supervision, inadequate shelter, and environmental neglect on January 18, 2019; and (3) inadequate supervision, inadequate food, failure to protect, and environmental neglect on March 28, 2019. A fourth claim against Dollins's family was opened on June 7, 2020, for environmental neglect, inadequate food, and medical neglect.

The affidavit further asserts that as part of the June 7 pending claim, DHS employees made fifty attempts between June 8 and June 24 to locate Dollins and her children but were unsuccessful. DHS workers made numerous searches in several databases to locate addresses for Dollins; visited with her family members; and spoke with local law enforcement agencies, schools, and doctor's clinics in an attempt to locate the family. When DHS workers made contact with Dollins and arranged for meetings, Dollins did not show up. DHS workers finally located Dollins and her children on June 24, at which time Dollins tested positive for methamphetamine, amphetamine, and tramadol. Two other adults were in the home: one admitted smoking methamphetamine in the home and tested positive for both that and amphetamine, and the other adult refused a drug test but appeared to be under the influence of a controlled substance. The affidavit further states that three firearms, three drug pipes, one used syringe hidden in a baby sock, and a bag of methamphetamine were found in the home; there was little to no food and no formula in the home; exposed wires were found in almost every room of the home; and there was a generator inside the house. While Dollins reported that the children had medication and LT2 had a nebulizer and medication to treat his cystic fibrosis, none of these items were located in the home. In light of these discoveries, DHS workers placed Dollins's children in DHS custody.

On June 26, DHS filed a petition for dependency-neglect and emergency custody of the children, and the circuit court entered an order granting the petition the same day. On June 29, the circuit court entered an order finding that probable cause existed for the emergency order to

remain in place. The court further ordered Dollins to comply with the case plan, remain drug-free, submit to random drug screens, complete parenting classes, maintain stable housing and employment, resolve all criminal charges, allow DHS access to the home, and submit to a drug-and-alcohol assessment and comply with its recommendations.

On August 6, the circuit court entered an adjudication order finding the parties had stipulated that the children were dependent-neglected on the grounds of neglect due to inadequate supervision and LT2's medical neglect. The circuit court set a goal of reunification. On October 30, the circuit court entered a review order finding that Dollins had partially complied with the case plan. The court also ordered that LT1 be placed in the permanent custody of her father Bubba Sullivan, and they were dismissed from the case. The court continued the goal of reunification. Another review order was entered on March 31, 2021, wherein the circuit court found that Dollins was in minimal compliance with the case plan. The court further found that BT, GT, and LT2 were not in the same placement because DHS could not find a placement for all three children.

On June 11, the circuit court entered a permanency-planning order that changed the goal to adoption. The court found that Dollins had minimally complied with the case plan and that the separate placement for the children was appropriate. On August 30, the children's attorney ad litem (AAL) filed a petition to terminate Dollins's parental rights to BT, GT, and LT2. The AAL alleged that three grounds supported termination—failure to remedy, subsequent factors, and aggravated circumstances—pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)*(a)*, (vii)*(a)*, and (ix)*(a)(B)(i)* (Supp. 2021). The AAL also alleged that termination was in the children's best interest. DHS later moved to join the termination petition.

A termination hearing was held on November 9, during which Dollins; Mary Murphy, a court appointed special advocate; Kelsey Jones, a DHS caseworker; and Amanda Losh, a DHS program assistant, testified. At the conclusion of the hearing, the circuit court granted DHS's petition to terminate Dollins's parental rights. The court found that DHS had proved all three grounds alleged, that termination was in the best interest of the children in light of the testimony that the children are adoptable, and that they are subject to potential harm due to Dollins's drug use and criminal issues. The court entered a termination order on November 15 restating its findings. Dollins has appealed from this order.

In terminating parental rights, the circuit court must make two findings by clear and convincing evidence: at least one statutory ground must exist, and termination must be in the best interest of the child. *Bair v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 481, at 2 (citing Ark. Code Ann. § 9-27-341 (Repl. 2015)). In making a "best interest" determination, the circuit court must consider two factors: the likelihood that the child will be adopted and the potential harm to the child if custody is returned to a parent. *Id.* (citing Ark. Code Ann. § 9-27-341). Clear and convincing evidence is such a degree of proof that produces in the fact-finder a firm conviction regarding the allegation to be established. *Id.* Our review of the termination of parental rights is de novo. *Id.* Our inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous, and we leave to the fact-finder credibility determinations. *Id.* A finding is clearly erroneous when, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *Id.*

On appeal, Dollins does not challenge the circuit court's finding that grounds supported the termination decision. Her only point on appeal is that the circuit court clearly erred in finding that termination is in the best interest of the children. She does not challenge the circuit court's

4

potential-harm or adoptability findings. Instead, she makes the limited assertion that the best-interest decision is reversible because the court did not adequately consider the negative impact termination would have on the children because they would likely be adopted separately.

This argument is not preserved for appeal. At the conclusion of the hearing, Dollins's attorney argued that DHS failed to present sufficient evidence that the children are adoptable and that they were at risk of potential harm if returned to Dollins. Counsel for Dollins stated:

> There's no specific place that [the children are] going to go, the possibility of Levi, and with that possibility, it's still a possibility the children are going to be split up. And if they're returned to [Dollins], they would be together, and so for that, thank you, Your Honor.

This statement does not sufficiently raise the sibling-separation argument that Dollins is now arguing on appeal. *Defell v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 27, at 7 (holding that the appellant failed to preserve the sibling-separation argument for appeal). Further, we will not review a matter on which the circuit court has not ruled, and the burden of obtaining a ruling is on the movant. *Id.* Accordingly, we hold that Dollins's sibling-separation argument is not preserved for appeal.

Even if Dollins had preserved the argument, it would not prevail. She argues that the court did not adequately consider the negative impact termination would have on the children because they would likely be adopted separately. Dollins points out that there is evidence that LT2's foster parent is interested in adopting him only and a lack of evidence demonstrating that separating the children is in their best interest.

This court has held that keeping siblings together is an important consideration but is not outcome determinative because the best interest of each child is the polestar consideration. *Martin v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 192, at 6, 596 S.W.3d 98, 102. Furthermore, evidence

of a genuine sibling bond is required to reverse a best-interest finding based on the severance of a sibling relationship. *Id.*, 596 S.W.3d at 102.

In the case at bar, there was no evidence presented at the termination hearing of a sibling bond between LT2 and his siblings BT and GT. Rather, the evidence shows that LT2 was taken into DHS custody when he was nine months old and that he has been separated from BT and GT since that time, except during visitation with Dollins, which, according to the evidence, was irregular. Without some evidence of the existence of a sibling bond, we hold that the circuit court did not clearly err in finding termination was in the best interest of BT, GT, and LT2.

Dollins makes one final argument under this point. She argues that DHS presented a separate-sibling adoption plan and failed to demonstrate why the plan was necessary. Dollins is critical of the circuit court for failing to ask for additional information or for clarification as to how this plan is in the children's best interest. She then cites *Schubert v. Arkansas Department of Human Services*, 2010 Ark. App. 113, and contends that the circuit court simply relied on DHS's determination as to what is in the children's best interest in regard to adoption, effectively abdicating its obligation to decide what is in the best interest of the children. In *Schubert*, this court held that it was erroneous for the circuit court to accede to DHS's recommendation when determining a legal issue rather than considering the merits of the Schuberts' petition for adoption and intervention. *Id.* at 7.

The holding in *Schubert* does not apply to the instant case. The issue in question is whether termination of Dollins's parental rights is in the best interest of her children. This is not a legal issue. It is an issue of fact, and its determination shall be based on a circuit court's finding by clear and convincing evidence. *See* Ark. Code Ann. § 9-27-341(b)(3)(A)(i), (ii). Further, the circuit court did not accede to DHS's recommendations on this issue. Rather, the circuit court fulfilled its

statutory obligation by finding that termination was in the best interest of Dollins's children on the bases of testimony that the children are adoptable and because they are subject to potential harm if returned to Dollins due to her drug use and criminal issues. Credibility determinations are left to the circuit court, and we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *White v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 459, at 7, 558 S.W.3d 423, 427. Accordingly, we hold that the circuit court's finding that termination is in the best interest of the children is not clearly erroneous and affirm.

Affirmed.

ABRAMSON and GLADWIN, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.