Cite as 2022 Ark. App. 355

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-22-92

|  |  |
|---|---|
| | **Opinion Delivered** September 28, 2022 |
| JODI BOBBITT | APPEAL FROM THE LOGAN |
| APPELLANT | COUNTY CIRCUIT COURT, SOUTHERN DISTRICT |
| V. | |
| | [NO. 42BJV-20-12] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE TERRY SULLIVAN, JUDGE |
| APPELLEES | |
| | AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

This is an appeal from an order terminating Jodi Bobbitt's parental rights to her five minor children. J.P.(1), J.P.(2), J.P.(3), and J.P.(4) are among eight children Jodi adopted with her former husband, Jeconiah Posey. Jodi's youngest child, J.B., who was born after that marriage ended, is her biological child. Brandon Edgmon was identified as J.B.'s father.[1] J.B. was fostered with Posey, who took sole custody of the other children, and J.B. was placed with Posey as a foster parent while the Arkansas Department of Human Services (DHS) worked to unify J.B. with Edgmon.

Jodi does not allege procedural error or deny there were grounds for termination. We abbreviate our recitation of the facts to matters that are material to her sole argument, which is

---

[1]Edgmon was added as a party after DNA testing confirmed his paternity. He appeared at the termination hearing.

that it was not in her children's best interest to terminate her parental rights as they were working toward permanent placement with their fathers.

## I. *Standard of Review*

Termination of parental rights is a two-step process that requires the circuit court to find at least one statutory ground for termination and find that termination is in the juvenile's best interest. *E.g.*, *Cole v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 481, at 8, 611 S.W.3d 218, 222–23.

A circuit court must find grounds and best interest by clear and convincing evidence, which requires a "degree of proof that will produce in the finder of fact a firm conviction regarding the allegation sought to be established." *Id.* at 8, 611 S.W.3d at 223. But only a best-interest finding as a whole—not each factor—is required to be supported by clear and convincing evidence. *Id.* at 9, 611 S.W.3d at 223.

On appeal, termination-of-parental-rights cases are reviewed de novo, and an appellate court will not reverse a circuit court's termination order unless the findings are clearly erroneous, meaning "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *Id.* at 8–9, 611 S.W.3d at 222–23. Further, we give due deference to the circuit court's personal observations and ability to judge the credibility of witnesses. *Id.* at 8, 611 S.W.3d at 223.

To make a best-interest finding, the circuit court is ordinarily required to consider two statutory factors: (1) the likelihood of adoption for the juvenile and (2) the potential harm that would result to the juvenile if he or she were returned to the parent's custody. *Id.* at 8, 611 S.W.3d at 222–23. The potential-harm analysis is conducted in broad terms; a *specific* potential

harm does not have to be identified or proved by clear and convincing evidence. *Pine v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 781, at 11, 379 S.W.3d 703, 709. And adoptability is not a controlling consideration—or even a proper consideration—in every case. When a child will achieve permanency with one parent, it is error to conclude that terminating the other parent's rights is in the child's best interest simply because the child is adoptable. *Lively v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 131, at 8, 456 S.W.3d 383, 388. Instead, factors like whether the parent physically harmed or posed a risk to the child and whether the parent would be able to provide future support should control. *See id.* at 7–8, 456 S.W.3d at 388.

## II. *Relevant facts*

Jodi's drug of choice was methamphetamine. The minors were removed from her custody in July 2020 because DHS was called after the water was shut off. One of the children, J.P.(1), had just been released from Arkansas Children's Hospital for a MRSA infection. There was concern that without running water, the infection could return. When a family services worker arrived, Jodi could not be found. There were people living in campers on the property who could access the home. Two of those people tested positive for methamphetamine.

The circuit court adjudicated the children dependent-neglected in September 2020 based on "the mother's parental unfitness and neglect, including the environmental neglect due to the lack of water in the home, the failure to protect a medically fragile child, and inadequate supervision of the mother by leaving the children in the care of drug users, specifically users of methamphetamine."

In March 2021, the circuit court found Jodi had received some benefit from services, but she had failed to obtain stable and appropriate housing, had no income or transportation,

3

and had not addressed her drug use. The court ordered Jodi to comply with inpatient drug treatment and attend counseling. By July 2021, Jodi still hadn't remedied the primary obstacles to returning her children and still hadn't completed drug treatment. Four of Jodi's fourteen urine screens during the case tested positive for amphetamine and methamphetamine.

In July 2021, Jodi was arrested. Howard Bates, an investigator with the Logan County Sheriff's Department, testified that Jodi had picked up her husband, Roger Lowery, in a friend's car July 20 to talk about getting divorce papers signed. Lowery started punching Jodi in the face. Jodi reached into the back seat for something to shield herself with and found a detergent bottle. The bottle was full of gasoline.[2] As Lowery grabbed the bottle, the gasoline spilled over him. Jodi ran off the road as Lowery exited the vehicle, and Lowery was run over. Jodi left the scene. Lowery suffered two fractures to his right leg and lacerations to his back. Bates did not see any injuries on Jodi when he interviewed her the following day, and she couldn't explain why.

Jodi testified that Lowery began hitting her after he accused her of "having sex with people in the walls," and she refused to admit it. When the gasoline spilled, he thought she was trying to set him on fire.[3] He hit her hard one last time, and that's when she hit the ditch. Jodi was charged with second-degree battery and—because her friend had reported the car stolen and damaged—theft of a motor vehicle and criminal mischief. All charges were felonies.

---

[2]Jodi testified that she had brought the gasoline because the car's gas tank was low, and it was about 3:00 a.m. when she left Magazine to pick Lowery up in Booneville.

[3]Bates found no evidence Jodi had tried to ignite the gasoline.

The circuit court asked her, "Do you understand how the Court might be concerned that had you received unsupervised visitation, the children would have been around this man?" Jodi answered, "Yes, ma'am."

This was not the only dangerous romantic relationship depicted in the record. Jodi reported in a psychiatric evaluation that J.B.'s father is a man she had known briefly but was not in a relationship with.[4] She testified that he had wanted to be in a relationship with her, but he "is paranoid schizophrenic, multiple personalities, and became violent and was asked to leave and not come back around because he was taking weapons to [her] and [her] friends and trying to harm [them]."

Jodi herself demonstrated instability in the children's presence. During a supervised visit in October 2020 with DHS family service worker Amy Ashan, Jodi began to discuss her new boyfriend (Lowery), a topic Ashan had told her not to discuss. When Ashan addressed that instruction, Jodi became agitated, and Ashan tried to end the visit. Jodi refused to leave, and the police were called. The circuit court cited the incident in the termination order.

At least four times, Jodi either did not show up to inpatient drug rehab as scheduled or was discharged without completing the program. Further, she demonstrated no stability in housing, transportation, or employment at any time during the case. At the termination hearing, Jodi could only speculate that she would resume living at a pastor's house if she were released from detention. The circuit court thoroughly discussed the record of failed inpatient rehabilitation, the lack of a home or transportation, and detention for the incident with Lowery.

---

[4]The record implies, but does not definitively state, that this is Edgmon.

## III. *Discussion*

Jodi argues that the best-interest finding was clearly erroneous for the reasons we found important in *Lively*, 2015 Ark. App. 131, 456 S.W.3d 383. She notes that there was no finding that she physically abused her children. Though she acknowledged being a victim of domestic violence, she had also testified that she was working to divorce her abusive spouse. She had the ability to work, creating some prospect of future support if the children achieved permanency through a less restrictive remedy. Finally, Jodi observes that J.P.(1), J.P.(2), J.P.(3), and J.P.(4) will continue to have a relationship with their older siblings—who will retain a relationship with Jodi—and that terminating J.B.'s relationship with her will sever his legal relationship with them.

Her last argument is not preserved for appeal. To preserve an argument that a circuit court's best-interest decision overlooked the effect of termination on sibling relationships, the parent must raise the argument in the circuit court and introduce proof of the sibling bond. *Dollins v. Ark. Dep't of Human Servs.*, 2022 Ark. App. 306, at 5–6; *Defell v. Ark. Dep't of Human Servs.*, 2022 Ark. App. 27, at 7.

As to her remaining arguments, we believe the facts here are more like those in *White v. Arkansas Department of Human Services*, 2018 Ark. App. 459, 558 S.W.3d 423. In *White*, the mother argued that terminating her rights was not necessary because permanency would be achieved by placing the child with the other parent. *Id*. at 8, 558 S.W.3d at 428. We noted that Ark. Code Ann. § 9-37-341(c)(2)(A) (Supp. 2021) specifically allows terminating just one parent's rights if it is in the best interest of the child. *Id*. And we held that the record supported the circuit court's conclusion that the mother's instability and hostility would subject the child

to potential harm if she were returned to the home. *White*, 2018 Ark. App. 459, at 9, 558 S.W.3d at 428.

We acknowledge the evidence that Jodi made some progress and that some important failures might have been outside her direct control. For example, Jodi testified that she went without drug treatment between January and April 2021 because she was left homeless after her house burned. Jodi might have failed to maintain contact with DHS in part because Lowery usually kept her phone.

But the circuit court found that terminating Jodi's parental rights was in her children's best interest because Jodi "would expose the juveniles to a risk of harm through her actions, instability, and substance abuse if she is released from her incarceration." On this record, we cannot say that was clear error.

Affirmed.

WHITEAKER and MURPHY, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.