Cite as 2023 Ark. App. 140

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-22-642

BRITTANY PRICE

APPELLANT

V.

ARKANSAS DEPARTMENT OF
HUMAN SERVICES AND MINOR
CHILD

APPELLEES

Opinion Delivered March 8, 2023

APPEAL FROM THE JEFFERSON
COUNTY CIRCUIT COURT
[NO. 35JV-20-324]

HONORABLE EARNEST E. BROWN,
JR., JUDGE

AFFIRMED

**KENNETH S. HIXSON, Judge**

Appellant Brittany Price appeals from the termination of her parental rights to her

sons, Minor Child 1 (MC1) (DOB 08-30-12) and Minor Child 2 (MC2) (DOB 03-31-14).[1]

On appeal, Brittany argues that the evidence failed to demonstrate that termination of her

parental rights was in the children's best interest. We affirm.

I. *Relevant Facts*

---

[1]MC1's father is deceased. MC2's father is Michael Layton, and at the conclusion of
Brittany's termination hearing, the trial court stated that it was going to grant permanent
custody of MC2 to Michael.

On December 28, 2020, appellee Arkansas Department of Human Services (DHS) filed a petition for dependency-neglect and emergency custody of MC1 and MC2.[2] In the affidavit attached to the petition, DHS stated that it had a lengthy history with the family, which included multiple services that were provided to Brittany in 2014 after MC2 had tested positive at birth for cocaine and marijuana. The affidavit stated that, on December 24, 2020, DHS received a call from the police stating that Brittany was being arrested at her home for three counts of endangering the welfare of a minor, leaving MC1 and MC2 without a caretaker. It was reported that Brittany was smoking a cigarette dipped in PCP or formaldehyde, which created a strong odor and a "bunch of smoke" in the presence of the children. There were also open containers of alcohol present.

On December 29, 2020, the trial court entered an ex parte order for emergency custody of MC1 and MC2. A probable-cause order followed on January 12, 2021. The probable-cause order, which listed Michael Layton as MC2's putative father, gave Brittany supervised visitation with both children and gave Michael supervised visitation with MC2. The probable-cause order noted that Michael had requested to be considered for placement of MC2.

On April 1, 2021, the trial court entered an adjudication order finding that MC1 and MC2 were dependent-neglected based on Brittany's drug use, her failure to appropriately

_____

[2]At the time the petition was filed, Brittany was pregnant with a third son, MC3, who was born on April 8, 2020. After MC3 was born, DHS removed him from Brittany's custody and opened a separate dependency-neglect case involving MC3. MC3 is not a party to this appeal.

supervise the children, and her arrest, which placed the children in a dangerous situation. In the adjudication order, the trial court found that DNA results showed Michael to be MC2's father and that Michael did not contribute to MC2's dependency-neglect because MC2 was not in his custody at the time of the incident that caused removal. The goal of the case was established as reunification, and DHS was ordered to provide reunification services.

After a review hearing held on July 1, 2021, the trial court entered a review order on September 2, 2021. In the review order, the trial court found that Brittany had partially complied with the case plan but needed to continue in her counseling and needed to demonstrate a sustained period of sobriety. The trial court noted that on the day of the review hearing, Brittany tested negative for illegal drugs but tested positive for alcohol. The goal of the case remained reunification.

Another review hearing was held on August 9, 2021, with a review order entered on September 22, 2021. In that review order, the trial court found that the goal of the case remained reunification with the concurrent goal of relative placement.

After a permanency-planning hearing held on December 16, 2021, the trial court entered a permanency-planning order on February 9, 2022. In that order, the trial court noted that on the day of the hearing, Brittany tested negative for illegal drugs but positive for alcohol. The trial court found that Brittany had partially complied with the case plan but had not been attending her outpatient substance-abuse counseling or her mental-health counseling. In the permanency-planning order, the trial court stated that MC2 was allowed to begin a trial home placement with his father, Michael Layton.

A fifteen-month permanency-planning hearing was held on March 17, 2022, and an order was filed on July 7, 2022. The trial court noted that Brittany had tested positive for PCP on a March 2, 2022, court-ordered hair-follicle test. The trial court found that Brittany had not complied with the case plan; had not been compliant with making herself available for random drug screens; had not been participating in mental-health and substance-abuse counseling; and continued to exhibit highly erratic and disturbing behavior. In the fifteen-month permanency planning order, the trial court changed the goal of the case to adoption.

On April 13, 2022, DHS filed a petition to terminate Brittany's parental rights to MC1 and MC2. In its petition, DHS alleged that Brittany's parental rights should be terminated based on the statutory grounds of failure to remedy and subsequent factors. *See* Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2021). The termination hearing was held on June 7, 2022.

The June 7, 2022 hearing was a combined hearing consisting of a permanency-planning hearing involving MC3 in the separate dependency-neglect case and the termination hearing involving MC1 and MC2 in the present case. In the permanency-planning portion of the hearing, the testimony showed that MC3 was thriving in the placement of a relative, Evelyn Terry. At the conclusion of the permanency-planning portion of the hearing, the trial court changed the goal of the case in the case involving MC3 to adoption.

DHS family-service-worker supervisor Kamelia Edwards testified at the termination hearing involving MC1 and MC2. Ms. Edwards testified that MC1 was presently in the care

4

of Evelyn Terry, where MC1's youngest brother MC3 was also placed. Ms. Edwards stated that MC2 was placed with his father, Michael Layton. Ms. Edwards stated that both of these relative placements were appropriate and that both MC1 and MC2 were doing well and making progress. Ms. Edwards stated that MC1 is adoptable and that Ms. Terry had expressed the desire to adopt him.

Ms. Edwards testified that she recommended termination of Brittany's parental rights because of Brittany's substance abuse, mental-health issues, and inability to protect the children. Ms. Edwards stated that Brittany had tested positive for PCP and methamphetamine on March 2, 2022, and that Brittany tested positive for methamphetamine on the day of the termination hearing. In addition, Brittany was arrested on February 19, 2022, and charged with possession of methamphetamine and cocaine, possession of drug paraphernalia, and criminal use of a prohibited weapon. Those charges remained pending as of the termination hearing. Ms. Edwards stated that Brittany had initially completed a drug-treatment program but that, despite her persisting drug problem, Brittany has refused any further drug treatment.

Ms. Edwards further testified that Brittany has untreated mental-health issues, including reactive attachment disorder, which causes her to react and respond inappropriately. Ms. Edwards stated that Brittany had stopped going to counseling to address these issues. Ms. Edwards stated that Brittany's visitation with the children was sporadic and that when Brittany did visit, she exhibited erratic behavior that made the

children uncomfortable and frightened MC1. Ms. Edwards described Brittany's actions during visitation as follows:

> The up and down behavior, emotions, pacing, her delivery. Like I said, a lot of conversations go on in the visitation and we're not sure who Brittany is talking to. She's rambling about things that have happened from her childhood to current. I can probably tell you everything that she experienced just about in her life because she just talks. You don't have to say anything back. She's not necessarily looking at you. She's looking somewhere else and she's just talking.

Ms. Edwards testified that Brittany had "sabotaged every effort that myself and whomever possibly tried to give her to make it our fault and not hers." Ms. Edwards stated that the problems that caused removal of the children had not been remedied despite the offer of DHS services and that if the children were returned to Brittany, it would be traumatic and that "their safety would definitely be in jeopardy."

Evelyn Terry was the only other witness to testify at the termination hearing. Ms. Terry testified that MC1 had been in her custody for almost a year and a half and that he was "doing wonderful." Ms. Terry stated that MC1 had expressed fear about the possibility of being returned to his mother. Ms. Terry stated that if Brittany's parental rights were terminated, she was interested in adopting MC1.

At the conclusion of the termination hearing the trial court announced that it was going to terminate Brittany's parental rights based on the evidence presented. The trial court also announced that it was going to grant permanent custody of MC2 to Michael Layton.

On July 22, 2020, the trial court entered an order terminating Brittany's parental rights to MC1 and MC2. The trial court found by clear and convincing evidence that both

statutory grounds alleged in the petition supported termination, and the court made these specific findings:

> *That the juveniles have been adjudicated by the Court to be dependent-neglected and have continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.* Specifically, the Department took a 72-hour hold on the juveniles on December 24, 2020. At the time of the removal, the mother tested positive for PCP and was arrested for endangering the welfare of the minors. Since December 24, 2020, the juveniles have remained in foster care while the Department has attempted to provide services to Ms. Price. During this open case, Ms. Price gave birth to a third child [MC3] who was born with PCP in his system on or about April 8, 2021. On February 19, 2022, Ms. Price was arrested and has pending felony charges for possession of METH and Cocaine (60CR-22-1654). The mother submitted to a hair follicle on or about March 2, 2022. That hair follicle was positive for PCP and METH. Further, when Ms. Price was drug tested today (6/7/2022) just prior to the start of the hearing, she tested positive for METH. This Court finds by clear and convincing evidence that the conditions which caused the removal (illegal drug use) have not been remedied and they continue to exist today.

> *That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juveniles in the custody of the parent is contrary to the juveniles' health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.* Specifically, Brittany Price has exhibited bizarre behavior that appears to show that Ms. Price is suffering from some mental health issues. During visits with the children, Ms. Price carries on conversations with individuals or beings that are not physically present. Ms. Price also exhibits excessive, manic, and compulsive talking. Despite urgings from the Department to engage in mental health treatment, Ms. Price refused and was discharged from mental health treatment due to several missed appointments. Ms. Price has exhibited bizarre and disruptive behavior during court hearings in this matter. The Court has witnessed Ms. Price's behavior when Ms. Price has been emotional and erratic. Ms. Price's behavior at prior hearings has made court hearings difficult because the Court never knows what it's going to get with Ms. Price. As a result, this Court has encouraged Ms. Price to get into treatment. Ms. Price has refused to engage in mental health treatment. Such actions on the part of Brittany Price demonstrate an incapacity, indifference and/or unwillingness to rehabilitate the circumstances that prevent the

7

juveniles from being placed in Ms. Price's custody and/or remedy the subsequent issues and factors which also cause the juveniles to remain in foster care.

The trial court also found by clear and convincing evidence that termination of parental rights was in MC1's and MC2's best interest, and the court considered the likelihood that the children would be adopted as well as the potential harm of returning them to Brittany's custody as required by Arkansas Code Annotated section 9-27-341(b)(3)(A)(i) & (ii). The trial court specifically found:

> As to the juveniles' adoptability, the Court finds that the juveniles are highly adoptable because an adoptive match list was run and there were more than 100 potential matches. In addition, there was testimony that [MC1's] foster parent (who is aware and has first-hand knowledge of all of the juvenile's medical diagnoses and conditions) stood ready to adopt him. As to potential harm, the Court finds that the juveniles would be subjected to potential harm because of Brittany Price's continued substance abuse issues; refusal to participate in mental health therapy/treatment; erratic and troubling behavior; housing instability; the juveniles' fear and trepidation regarding their mother and her behavior; and the overall general lack of compliance to put herself in a position to perfect reunification.

This appeal followed.

## II. *Standard of Review*

A trial court's order terminating parental rights must be based upon findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Hum. Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the trial court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is

8

evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Id.*

In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The order terminating parental rights must also be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). However, only one ground must be proved to support termination. *Reid v. Ark. Dep't of Hum. Servs.*, 2011 Ark. 187, 380 S.W.3d 918.

The intent behind the termination-of-parental rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Cobb v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 85, 512 S.W.3d 694. Moreover, a child's need for permanency and stability may override a parent's request for additional time

to improve the parent's circumstances. *Id.* Finally, a parent's past behavior is often a good indicator of future behavior. *Id.*

### III. *Best Interest*

On appeal, Brittany does not challenge the trial court's findings as to the statutory grounds supporting termination. Brittany instead argues, for various reasons, that there was insufficient evidence that termination was in MC1's or MC2's best interest.

### A. MC2

In Brittany's brief, she first addresses best interest as it relates to MC2. Therefore, we will address these issues first. Brittany's first argument is that the termination of her parental rights to MC2 should be reversed because there was no proof to support the trial court's finding that MC2 is adoptable. Brittany notes that Ms. Edwards testified that MC1 is adoptable but gave no testimony on the adoptability of MC2. Brittany cites *Haynes v. Arkansas Department of Human Services*, 2010 Ark. App. 28, where this court stated that the governing statute requires consideration of adoptability as part of the best-interest analysis, and that consideration requires evidence, or at least some finding that the absence of proof on adoptability makes no legal difference.

Contrary to Brittany's argument, the record contains evidence of MC2's adoptability. An "Adoption Court Report Addendum," signed by adoption supervisor Quita Harris, was introduced at the termination hearing, stating that an adoption-matching search was completed on both MC1 and MC2 that produced a list of 155 possible adoptive parents that match their characteristics. This evidence supports the trial court's finding that "the

10

juveniles [including MC2] are highly adoptable because an adoptive match list was run and there were more than 100 potential matches." Moreover, while there was evidence to support the trial court's finding that MC2 is adoptable, MC2's adoptability is of little significance in this case because MC2 was placed in the permanent custody of his father, Michael Layton.

Brittany next argues that we should reverse the termination decision because termination was not necessary for MC2 to achieve permanency. Brittany premises this argument on the fact that MC2 has been placed in the permanent custody of his father, where MC2 will remain whether or not Brittany's parental rights are terminated.

Brittany analogizes this case to *Lively v. Arkansas Department of Human Services*, 2015 Ark. App. 131, 456 S.W.3d 383. In *Lively*, the children had been placed in the permanent custody of their mother, and we reversed the termination of the father's parental rights. In *Lively*, we noted that the children's relationship with their paternal grandparents appeared to be one of the most stable influences in their lives, and that termination of their father's parental rights jeopardized that relationship. We further stated in *Lively* that the father had been consistently visiting his children without incident and that the termination served to cut off the children's ability to benefit from the father's financial support. On those facts, we held in *Lively* that the trial court clearly erred in finding that termination of the father's parental rights was in the children's best interest.

The circumstances here, however, are not like those in *Lively*. In *Lively*, this court held that termination of the father's parental rights was not in the children's best interest in

11

large part due to the close and stabilizing relationships between the children and their paternal grandparents, which would be jeopardized upon termination. In the present case, there was no evidence that MC1 or MC2 had a close or stabilizing relationship with their maternal grandparents or any other members of Brittany's family. Moreover, in *Lively*, we relied, in part, on the father's consistent visitations with his children, which went without incident. Here, the testimony showed that Brittany visited the children only sporadically and that during the visits she did attend, Brittany exhibited erratic behavior and had rambling conversations with herself, all of which made the children uncomfortable.

We believe the facts here are more like those in *White v. Arkansas Department of Human Services*, 2018 Ark. App. 459, 558 S.W.3d 423. In *White*, the mother argued that terminating her parental rights was not necessary because permanency would be achieved by placing the child with the other parent. We noted that Ark. Code Ann. § 9-27-341(c)(2) specifically allows terminating just one parent's rights if it is in the best interest of the child. In affirming the termination in *White*, we held that the record supported the trial court's conclusion that the mother's instability and hostility would subject the child to potential harm if she were returned to the home. *See also Bobbitt v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 355 (holding that the trial court did not clearly err in finding that termination of the mother's parental rights was in the children's best interest, notwithstanding that the children had been placed with their father, as a result of the trial court's finding that the mother would expose the children to a risk of harm through her actions, instability, and substance abuse if she was released from incarceration).

MC2 was originally removed from Brittany's custody due to Brittany's arrest on three counts of endangering the welfare of a minor. Those charges remain pending. In addition, during the dependency-neglect case, Brittany received additional charges for possession of methamphetamine and cocaine, possession of drug paraphernalia, and criminal use of a prohibited weapon, and those charges remain pending as well. Brittany tested positive for PCP and methamphetamine during the case, and she tested positive for methamphetamine on the day of the termination hearing. The testimony at the termination hearing showed that Brittany has significant drug-abuse and mental-health issues for which she has refused treatment, which created a dangerous situation for MC2 in the event he was returned to her custody. In light of these facts, we conclude that, even though MC2 was in his father's permanent custody, the trial court did not clearly err in finding that termination of Brittany's parental rights was in MC2's best interest.

Finally, in regard to MC2, Brittany argues that the trial court's best-interest finding was clearly erroneous because the trial court failed to consider the impact that the termination would have with respect to MC2's relationship with and separation from his siblings. However, this argument was not made to the trial court and is thus not preserved for review. *See Kugler v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 485, 656 S.W.3d 1.

Moreover, even had Brittany preserved her sibling-separation argument for appeal, it would fail. This court has held that keeping siblings together is an important consideration but is not outcome determinative because the best interest of each child is the polestar consideration. *Dejarnette v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 410, 654 S.W.3d 83.

Furthermore, evidence of a genuine sibling bond is required to reverse a best-interest finding based on the severance-of-a-sibling-relationship argument. *Id.* Here, there was no evidence presented at the termination hearing of a sibling bond between MC2 and his two brothers. Under these facts, we cannot say that the trial court clearly erred when it determined that terminating Brittany's parental rights to MC2 was in MC2's best interest.

## B. MC1

We next address Brittany's argument that the trial court clearly erred in finding that termination of her parental rights was in MC1's best interest. For the following reasons, we disagree.

Regarding MC1, Brittany first contends that MC1 had the ability to achieve permanency through the less restrictive alternative of a permanent guardianship with a relative, Evelyn Terry, with whom he had been placed long before termination. However, this argument is not preserved for review because Brittany did not make the less restrictive relative-placement argument she now makes on appeal to the trial court at the termination hearing, and she failed to bring up the transcript of the fifteen-month permanency-planning hearing in which the goal of the case was changed solely to adoption. *See Cole v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 481, 611 S.W.3d 218.

Moreover, even had this argument been preserved, it would be without merit. Ms. Terry testified that she was interested in adopting MC1 to give him permanency. There was no compelling reason for the trial court to choose permanent custody rather than termination of parental rights and adoption because there was no reasonable prospect that

14

Brittany would eventually reunify with MC1 as demonstrated by her failure to challenge the statutory grounds that support the termination. *See Gamble v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 404, 636 S.W.3d 368.

Finally, with respect to MC1, Brittany argues that the trial court failed to consider the impact that the termination would have on MC1's relationship with his siblings. However, for the same reasons expressed in our review of the termination involving MC2, this argument is not preserved and, at any rate, has no merit.

IV. *Conclusion*

On the record presented, we hold that the trial court did not clearly err in finding that termination of Brittany's parental rights was in MC1's and MC2's best interest. Accordingly, we affirm the order terminating Brittany's parental rights to both children.

Affirmed.

VIRDEN and MURPHY, JJ., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.